IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

BEN DURAN,
An individual,

Plaintiff

v.

POWER SERVICES COMPANY, a Colorado corporation,

Defendant.

**COMPLAINT AND REQUEST FOR JURY TRIAL**

Ben Duran, through his attorneys, Steven L. Murray of Murray Law, LLC, and Thomas H. Mitchiner of Mitchiner Law, LLC, asserts the allegations and claims below against Defendant, Power Services Company.

This dispute is an employment discrimination case about Defendant's discriminatory treatment of Mr. Duran, based on his disability and issues related to his disability, under the Americans with Disabilities Act of 1990 and the American with Disabilities Amendments Act of 2008, as amended, 42 U.S.C. § 12101, et. seq., [collectively referenced as the ADA].

Duran also alleges claims for Defendant's breach of contract and violation of the doctrine of promissory estoppel.

## I.  PARTIES

1. Duran, a male, is a United States citizen and resident of Windsor, Colorado.

2. At all times in issue, Duran resided and worked in the Judicial District of the Court.

3. Defendant Power Services Company is a Colorado business registered with the Colorado Secretary of State.

4. At all times in issue, Defendant conducted business in Greeley, Colorado, within the Judicial District of this Court.

## II.  JURISDICTION AND VENUE

5. Jurisdiction is asserted under the ADA, 42 U.S.C. § 12117(a).

6. Supplemental jurisdiction is proper under 28 U.S.C. § 1367(a).

7. At all times at issue, Duran was an employee of Defendant as defined by the ADA, and Defendant was an employer as defined by the ADA.

8. Duran is a member of the ADA's protected class. He was a qualified person with a disability under the ADA.

9. Pursuant to 28 U.S.C. § 1391(b)(c), venue is proper in this Court because the events and claims arose in the Judicial District of this Court.

## III.  ADMINISTRATIVE PROCEDURES

10. Before filing this action, Duran properly and lawfully exhausted all required administrative prerequisites, procedures, and remedies.

11. On or about October 26, 2018, Duran filed a timely charge of discrimination with the Equal Employment Opportunity Commission [Charge No. 541-2019-00231].

12. On February 9, 2021, the EEOC issued a Notice of Right to Sue letter to Duran.

13. This civil action is timely and properly filed because it is filed within 90 days of the date of the Notice of Right to Sue letter.

## IV. GENERAL ALLEGATIONS

14. On or about October 31, 2006, Duran began his employment with Defendant.

15. Defendant provides industrial and environmental cleaning services.

16. Duran served as Defendant's General Manager.

17. Duran ran Defendant's day-to-day operations, including but not limited to bidding and negotiating customer contracts and servicing the contracts.

18. Defendant terminated Duran's employment on October 23, 2018.

19. In Duran's approximate thirteen years of employment with Defendant, he was a dedicated employee, and he performed all his duties and responsibilities successfully.

20. At the time of Duran's discharge, his salary exceeded $100,000.00.

21. At all times, Jim Humphrey was the President and Owner of Defendant, and he served as Duran's direct supervisor.

22. All actions of Humphrey discussed herein are actions of Defendant.

23. During Duran's employment, and before Duran's discharge from employment, Defendant did not advise him that his conduct or performance was deficient or below Defendant's standards.

24. On October 15, 2015, Duran suffered the loss of Brandon, his son, under tragic circumstances.

25. Duran was diagnosed with a disability in July 2018, and he began treatment for his disability in July 2018.

26. Duran informed Defendant, including Humphrey, of his disability.

27. Duran took approved medical leave from employment from August 28, 2018, to September 29, 2018.

28. While Duran was on medical leave, he kept Humphrey and Defendant updated on his medical condition.

29. Humphrey promised Duran his job was safe and told him not to worry about his job.

30. Duran relied on Humphrey's promise that his job was secure.

31. From September 2018 through the date of his discharge on October 23, 2018, Duran sought to return to work.

32. Duran informed Humphrey he was ready to return to work.

33. Defendant and Humphrey refused to meet with Duran to discuss his return to work.

34. Duran and Humphrey would schedule a meeting, and Humphrey would cancel the appointment.

35. Duran and Humphrey had a meeting set for September 29, 2018, at Humphrey's home, to discuss his return to work; however, Humphrey cancelled this meeting.

36. On October 23, 2018, Duran finally met with Humphrey at Humphrey's home, per Humphrey's direction.

37. Humphrey terminated Duran's employment in the October 23, 2018 meeting.

38. As a direct, foreseeable, and proximate result of the Defendant's unlawful, intentional discrimination complained of herein, Duran suffered injuries and losses, including but not limited to loss of employment, the potential and/or actual loss of wages the loss of emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, earnings, income, benefits, diminution of earning capacity, actual and/or potential retirement benefits, and future pecuniary losses.

39. Defendant acted intentionally willfully, with malice, and/or with reckless indifference to the federally protected rights of Duran to be free from discrimination secured by and under the laws of the United States, including the ADA.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM
### [Disability Discrimination]

43. Duran incorporates and restates all allegations previously asserted as though fully incorporated herein.

44. The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

45. The ADA prohibits the Defendant from discriminating against Duran: (1) regarding his compensation, terms, conditions, or privileges of employment, because of

his disability and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive him of employment opportunities, or otherwise adversely affect his status as an employee, because of his disability.

46. Duran is a member of the ADA protected class.

47. At all times at issue herein, Duran was a "qualified individual" under the ADA.

48. Duran is an individual who, with or without reasonable accommodation: (1) could perform the essential functions of the employment positions he held with the Defendant. 42 U.S.C. § 12111(8); and (2) possesses the requisite skill, experience, education and other job-related requirements of the employment positions he held with the Defendant.

49. Duran has a disability under the ADA. 42 U.S.C. § 12101(1)(A).

50. Duran has a physical or mental impairment that substantially limits one or more major life activities of such individual; 42 U.S.C. § 12101(2)(A).

51. In July 2018, Duran began suffering from severe depression.

52. Duran's depression substantially limited one or more of his life activities, including concentrating, performing manual tasks, seeing, thinking, communicating, performing tasks, and working. 42 U.S.C. § 12102(2)(B).

53. Defendant knew of Duran's depression, his disability.

54. Defendant engaged in unlawful, direct, and intentional disability discrimination against Duran because of his disability, and/or, his protected status as a qualified individual with a disability.

55. Defendant's treatment of Duran, including terminating his employment, was because of Duran's disability and protected status under the ADA.

56. The Defendant discriminated against Duran: (1) regarding his compensation, terms, conditions, or privileges of employment, because of his disability; and/or (2) by limiting, segregating, or classifying him in any way, which would deprive, or tend to deprive him of employment opportunities, or otherwise adversely affect his status as an employee, because of his disability.

57. The Defendant's unlawful, intentional disability discrimination was created, perpetrated, and/or tolerated by the Defendant's officials and managers, all having specific knowledge, or reason to know, of Duran's disability and the discriminatory actions set forth herein.

58. The Defendant's treatment of Duran constitutes intentional, unlawful disability discrimination, in violation of the ADA.

## SECOND CLAIM
### [Disability Discrimination - Regarded as Disabled]

59. Duran incorporates and restates all allegations previously asserted as though fully incorporated herein.

60. The ADA's definition of disability and discrimination includes discrimination against a person based on the person being **regarded as** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2) (A).

61. An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he has been subjected to an action prohibited by the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

62. Duran meets the standard of being regarded as having a physical or mental impairment under the ADA.

63. At all times at issue herein, Duran was a "qualified individual" under the ADA. Specifically, Duran was as an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions he held with the Defendant. 42 U.S.C. § 12111(8).

64. Defendant engaged in intentional, willful, and unlawful disability discrimination against Duran based on the Defendant regarding Duran as having a physical or mental impairment that substantially limits one or more of his major life activities of such individual. 42 U.S.C. § 12101(2) (A).

## THIRD CLAIM
### [Disability Discrimination - Record of Disability]

64. Duran incorporates and restates all allegations previously asserted as though fully incorporated herein.

65. The ADA's definition of disability and discrimination includes discrimination against a person based on the person's **record of** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2) (A).

66.     As set forth, Duran has a record of mental and physical impairments which substantially affect one or more of major life activities, including performing manual tasks, seeing, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(B).

67.     At issue herein, Duran was a "qualified individual" under the ADA. Specifically, Duran was as an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions he held with the Defendant. 42 U.S.C. § 12111(8).

68.     Defendant engaged in intentional, willful, and unlawful disability discrimination against Duran including but not limited to discriminating against Duran based on his record of a disability.

## FOURTH CLAIM
### [Promissory Estoppel]

69.     Duran incorporates and restates all allegations previously asserted as though fully incorporated herein.

70.     Defendant, through Humphrey, made one or more promises to Duran.

71.     Defendant, through Humphrey, promised Duran his job was safe and secure.

72.     Defendant's promises were of the nature that it should reasonably have expected to induce action or forbearance by Duran.

73.     Humphrey had the authority to make promises to Duran about the terms and conditions of Duran's employment.

74. Defendant's promises to Duran addressed matters of apparent and severe importance to Duran. These matters included Duran's reasonable desire to: (1) improve his mental and physical health; and (2) return to work in a job in which he had succeeded.

75. Duran relied upon Humphrey's promises by: (1) continuing to work to improve his health and return to work; (2) not resigning his employment with the Defendant; (3) seeking to meet with Humphrey to discuss returning to work; and (4) not seeking other employment.

76. Duran's reliance on Humphrey's promises was reasonable.

77. Humphrey's promises were unique to Duran, not general promises to Defendant's workforce.

78. Humphrey possessed the authority to make the promises to Duran and to honor the promises.

79. Duran knew of Humphrey's authority to make the promises and honor the promises.

80. Duran suffered detrimental consequences because of his reliance on Humphrey's promises and Humphrey's failure to honor the promises.

81. Specifically, Duran lost his employment with Defendant because the Defendant and Humphrey did not honor its promises to Duran.

82. The promises created by the Defendant's actions are binding because justice can only be avoided by enforcement of the promise.

83. Defendant's breach of the promises made to Duran caused him to suffer damages, injuries, and losses, including loss of employment, the potential and/or actual loss of wages, earnings, income, diminution of earning capacity, damage to personal and professional reputation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and, actual and/or potential retirement benefits, future pecuniary losses, and other damages to be determined.

## FIFTH CLAIM
**[Breach of Contract]**

84. Duran incorporates and restates all allegations previously asserted as though fully incorporated herein.

85. Defendant, through Humphrey, promised Duran his job was safe and secure.

86. Defendant's actions, and Duran's actions following this promise, constituted a contract between Defendant and Duran.

87. Defendant breached the contract with Duran by discharging him from employment.

88. Defendant's breach of contract was intentional and willful.

89. Defendant's breach of contract caused Duran to suffer economic damages and losses, and compensatory damages and losses, including emotional distress and related harms.

## VI.  REQUEST FOR RELIEF

WHEREFORE, the Defendant's unlawful conduct directly caused Duran to suffer injuries, damages, and losses;

FURTHER, Duran respectfully requests this Court to enter judgment in his favor and against Defendant on the claims in issue and award the following relief for Duran's claims for relief, under the ADA, and all other claims:

(a)     To enter a judgment in favor of Duran and against Defendant, finding the acts of the Defendant constitute unlawful intentional discrimination in violation of the ADA.

(b)     To enter a judgment in favor of Duran and against Defendant, finding the acts of the Defendant constitute breach of contract.

(c)     To enter a judgment in favor of Duran and against Defendant, finding the acts of the Defendant constitute a violation of the doctrine of promissory estoppel.

(d)     To award Duran damages for back pay, front pay, restored benefits, accommodations, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which he is entitled.

(e)     To award Duran compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which he is entitled.

(f) To award Duran punitive damages.

(g) To award Duran attorney fees and costs.

(h) To award Duran pre-judgment and post-judgment interest at the appropriate rate provided by law.

(i) To direct Defendant to take such affirmative relief steps as are necessary to ensure that the effects of Defendant's unlawful employment practices are eliminated and do not continue to affect Duran's employment opportunities.

(j) Order the Defendant to reinstate Duran to employment.

(k) To award Duran front pay, and;

(l) To award Duran all other legal and equitable relief, to which Duran is entitled under any law, this Court deems just, equitable, and proper.

## VII. JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), the ADA, and all laws providing for a right to trial by jury, Duran requests a jury trial of all claims and issues.

Respectfully submitted this May 6, 2021 by:

Murray Law, LLC

/s/ Steven Murray
Steven Murray
Murray Law, LLC
1888 N. Sherman St., Ste 200
Denver, CO 80203
Phone: 303-396-9952
E-mail: steven@smurraylaw.com

Mitchiner Law, LLC

/s/ Thomas H. Mitchiner
Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St., Ste 200
Denver, CO 80203
Phone: 720-538-0371
E-mail: tmitchiner@mitchinerlawllc.com


*Attorneys for Plaintiff Ben Duran*

Address of Plaintiff.
2010 Searay Ct, Windsor, CO 80550